UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KISANA CARROLL, et al.,

Plaintiffs,

v.

CITY OF STOCKTON, et al.,

Defendants.

No.  2:23-cv-00194-DAD-SCR

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(Doc. No. 59)

This matter is before the court on the motion for summary judgment filed on behalf of defendants City of Stockton and Stockton Police Department Officers Christopher Knight, Nicholas Fogal, Matthew Garlick, and Thomas Giles (collectively, "defendants").  (Doc. No. 59.)  The pending motion was taken under submission on August 18, 2025.  (Doc. No. 67.)  For the reasons explained below, defendants' motion for summary judgment will be granted in part and denied in part.

/////

/////

/////

/////

/////

1

# BACKGROUND

## A.    Factual Background[1]

The plaintiffs in this action are Kisana Carroll and her daughter, T.R.  On August 3, 2022, at approximately 7:00 a.m., the Stockton Police Department SWAT team, including the individual defendant officers, arrived at plaintiffs' residence to secure it for the execution of a search warrant as part of a drug trafficking investigation.  (DUF ¶ 2; PF ¶ 1.)[2]  Police had obtained the search warrant in question based on a supporting affidavit in which the affiant concluded that George Rowland—plaintiff Carroll's partner and the father of her three children, including plaintiff T.R.—was storing marijuana at the residence he shared with plaintiffs and was selling marijuana from a business called the "Hyphy Smoker's Club" in connection with the Uptown Gang.  (DUF ¶ 1; PF ¶ 1; *see also* Doc. No. 59-3 at 66–67.)  The search warrant affidavit also reported that two shootings had recently taken place in the parking lot of the "Hyphy Smoker

/////

---

[1]  The relevant facts that follow are undisputed unless otherwise noted and are derived from the undisputed facts as stated by defendants and responded to by plaintiffs (Doc. No. 59-2 ("DUF")), the "disputed" facts as stated by plaintiffs and responded to by defendants (Doc. No. 63-2 ("PF")), as well as the declarations and exhibits attached to the pending motion and the opposition thereto, and the video files (flash drives) submitted to the court.  Where the parties object to the statements or evidence used and the court does not address their objections specifically, they are overruled, typically for reasons already addressed in response to prior objections, because the party admitted to the fact elsewhere, or because evidence cited directly provides adequate foundation.

[2]  Plaintiffs object to this statement as lacking foundation and based on inadmissible hearsay. (Doc. No. 63-3 at 3.)  Plaintiffs also dispute the implication that the arrival of the executing officers at the residence was proper and lawful.  (*Id*.)  The court rejects these objections.  The evidence does not lack foundation because it is supported by citation to the search warrant (Doc. No. 59-3 at 28) and the officers' body worn camera footage (*id.* at 133).  Moreover, "[t]he Search Warrant is . . . not hearsay if submitted to demonstrate its existence and appearance of validity, rather than the truth of its contents."  *Amie v. County of Los Angeles*, No. 14-cv-04330-DMG-PLA, 2015 WL 13916130, at *2 (C.D. Cal. Dec. 30, 2015).  Further, "at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).  Finally, plaintiff provides no evidence or authority for the claim that the statement in question implies the existence of a disputed fact or that the perceived implication of a statement can render the underlying statement disputed.  Accordingly, the court finds this statement to be undisputed.

Club," though Mr. Rowland was not implicated in either. (DUF ¶ 1; *see also* Doc. No. 59-3 at 37, 67.)

At the entry door of plaintiffs' residence, defendant Officer Knight gave the knock and notice announcements using a mallet to knock on the door and the stucco of the exterior wall near the window adjacent to the entry door. (DUF ¶ 3; PF ¶ 3; *see also* Doc. No. 63-1 at 530, Exh. 8, "GV"[3] at 07:00:48–07:01:24.) Each announcement was made as follows: "318 this is the Stockton Police Department, we have a search warrant, open the front door!" (DUF ¶ 3; PF ¶ 4; *see also* GV at 07:00:48–07:01:24.) Defendant Officer Knight made four such announcements over the course of approximately 36 seconds. (DUF ¶ 3; *see also* GV at 07:00:48–07:01:24.)

Officers heard a female voice (plaintiff Carroll) indicate that she was going to open the door approximately 21 seconds into the knock and notice announcements, and officers waited 15 more seconds thereafter. (DUF ¶ 5; PF ¶¶ 12, 18; *see also* GV at 07:01:09.) During those 15 seconds, one of the officers noted, "I can hear a woman, she's coming to the door," and then another officer who was looking through a front window toward the interior of the front door stated, "I can see someone standing there; they're not doing anything though." (PF ¶ 17; GV at 07:01:09–07:01:24.) Defendant Officer Giles then reportedly called for defendant Officer Fogal to deploy a battering ram. (Doc. No. 63-1 at 411, 496.) Officer Fogal used the battering ram to breach the front door of the residence, and in the process plaintiff Carroll was stuck by the door. (DUF ¶ 7; PF ¶ 21; *see also* GV at 07:01:24–07:01:26.) Plaintiff Carroll stated that the impact of the door injured the entire side of her body, and in particular her face and eye, causing her to suffer a concussion. (Doc. No. 63-1 at 127.)

Approximately 37 seconds after plaintiff Carroll was injured, defendant Officer Giles gave the order to "start medics." (DUF ¶ 7; GV at 07:01:26–07:02:03.) The SWAT team's tactical medic at the scene tended to plaintiff Carroll's injuries, and an ambulance then arrived to transport her to a hospital. (DUF ¶ 8; PF ¶ 31; *see also* Doc. No. 59-3 at 89–90, 153.) When the
/////

---

[3] "GV" refers to Officer Giles's body-worn camera footage.

3

ambulance arrived, plaintiff Carroll refused to leave until she could arrange care for her children using the ambulance driver's phone.  (PF ¶¶ 32–33; *see also* Doc. No. 63-1 at 160.)

The executing officers ultimately found 65.5 grams of marijuana in a car parked in front of the residence.  (PF ¶ 38; *see also* Doc. No. 59-3 at 258.)  George Rowland was located inside the residence, arrested, transported to the Stockton Police Department for processing, and then taken to the San Joaquin County Jail where he was booked.  (PF ¶ 36; *see also* Doc. No. 59-3 at 258.)  Mr. Rowland was released within a day.  (PF ¶ 39; see also Doc. No. 63-1 at 183.)

Plaintiff T.R. may have seen the door hit her mother.  (Doc. No. 59 at 28; PF ¶¶ 26–27.) Plaintiff T.R. testified at deposition that, following the incident, she experienced stomach aches, headaches, anxiety, depression, crying, and one panic attack, felt scared, developed a recurring fear of police, her grades dipped, and required regular counseling sessions.  (Doc. No. 63-1 at 341, 345, 352–55, 358–59, 361, 368.)  T.R. also reported that any time she thinks about the incident it feels the same all over again.  (*Id.* at 358.)  Plaintiff T.R. was deposed on February 6, 2025, and testified that so far that year she had talked to her mother five or six times about dealing with depression and being anxious.  (*Id.* at 359.)

## B.     Procedural Background

On January 31, 2023, plaintiffs filed their complaint initiating this action.  (Doc. No. 1.) On May 7, 2025, the parties stipulated to the dismissal of plaintiffs' tenth, eleventh, and twelfth claims asserted in their operative Second Amended Complaint ("SAC") and clarified that plaintiff T.R. was proceeding only on the SAC's thirteenth claim.  (Doc. No. 57.)  The following day, the court adopted the parties' stipulation.  (Doc. No. 58.)  The following claims therefore remain: (1) unlawful seizure in violation of the Fourth Amendment brought under 42 U.S.C. § 1983 by plaintiff Carroll against defendants Knight, Fogal, Garlick, and Giles; (2) excessive use of force in violation of the Fourth Amendment brought under 42 U.S.C. § 1983 by plaintiff Carroll against defendants Knight, Fogal, Garlick, and Giles; (3) denial of medical care in violation of the Fourth Amendment brought under 42 U.S.C. § 1983 by plaintiff Carroll against defendants Knight, Fogal, Garlick, and Giles; (4) violation of the First Amendment brough under 42 U.S.C. § 1983 by plaintiff Carroll against defendants Knight, Fogal, Garlick, and Giles; (5) a *Monell* liability

claim brought under 42 U.S.C. § 1983 by plaintiff Carroll against defendant City of Stockton; (6) a Bane Act claim pursuant to California Civil Code § 52.1, brought by plaintiff Carroll against all defendants; (7) a state law negligence claim brought by plaintiff Carroll against all defendants; (8) a state law assault claim brought by plaintiff Carroll against all defendants; (9) a state law claim for battery brought by plaintiff Carroll against all defendants; and (13) a state law negligent infliction of emotional distress ("NIED") claim brought by plaintiff T.R. against all defendants. (Doc. No. 21 at ¶¶ 25–82.)

On July 18, 2025, defendants filed the pending motion seeking summary judgment in their favor as to all of plaintiffs' remaining claims. (Doc. No. 59.) On August 6, 2025, plaintiffs filed an opposition to that motion, and on August 13, 2025, defendants filed their reply thereto. (Doc. Nos. 63, 66.)

**LEGAL STANDARD**

Below, the court sets forth the applicable legal standards that will be applied in resolving defendants' pending motion.

**A.    Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving

5

party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).  Indeed, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

6

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87 (citations omitted).

## B.　　Qualified Immunity

Government officials are immune "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-part inquiry for determining whether qualified immunity applies. *See also District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018); *Reichle v. Howards*, 566 U.S. 658, 664 (2012). First, a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If so, the court must ask whether the constitutional right was "clearly established." *Id.* This second inquiry must be undertaken in the specific context of the case. *Id.* The Supreme Court has removed any requirement that the *Saucier* test be applied in a rigid order, holding "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For a right to be "clearly established," its "contours must be sufficiently clear that a reasonable official would understand that" his or her actions violated that right. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("A Government official's conduct violates clearly established law when, at

7

the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "To meet this standard the very action in question need not have previously been held unlawful." *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014) (internal citation and quotation marks omitted); *see also Wesby*, 583 U.S. at 64; *al-Kidd*, 563 U.S. at 741 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); *Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019). This is especially the case in the context of alleged Fourth Amendment violations, where the constitutional standard of "reasonableness" requires a fact-specific inquiry. *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc).

Applying these legal standards the court will address defendants' motion for summary judgment as to each of plaintiffs' claims below.

## ANALYSIS

**A.    Plaintiff Carroll's Claim for Excessive Use of Force in Violation of the Fourth Amendment**

### 1.    Seizure

"The Fourth Amendment covers only 'searches and seizures[.]'" *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). Here, plaintiff Carroll asserts a Fourth Amendment claim for excessive use of force during a seizure. (Doc. No. 21 at ¶¶ 28–31.) The seizure plaintiff Carroll identifies is defendant's use of the battering ram on the door of the residence to hit her. (Doc. No. 63 at 11.) In their motion, defendants argue that the officers' use of the battering ram does not qualify as a seizure because officers did not use it with the intent to restrain plaintiff Carroll. (Doc. No. 59 at 18.) Instead, they argue that the battering ram was intended only to open the front door, and hitting plaintiff Carroll was simply an accident. (*Id.*) Recently, the Ninth Circuit addressed this issue:

> Before we consider whether the force used was reasonable, we first address whether Cheairs was seized within the meaning of the Fourth Amendment. *See Seidner v. de Vries*, 39 F.4th 591, 596 (9th Cir. 2022). "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment

8

when the officer by means of physical force or show of authority terminates or restrains his freedom of movement through means intentionally applied." *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012) (quoting *Brendlin v. California*, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007)). "A seizure requires the use of force *with intent to restrain.*" *Torres*, 592 U.S. at 317, 141 S.Ct. 989 (emphasis in original); *see also Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Accidental force will not qualify. Nor will force intentionally applied for some other purpose." *Torres*, 592 U.S. at 317, 141 S.Ct. 989 (citation omitted); *see also Nelson*, 685 F.3d at 876 ("To constitute a seizure, the governmental conduct must be purposeful and cannot be an unintentional act which merely has the effect of restraining the liberty of the plaintiff."). It is well settled that the inquiry into the intentionality of the use of force considers "whether the challenged conduct *objectively* manifests an intent to restrain." *Torres*, 592 U.S. at 317, 141 S.Ct. 989 (emphasis in original); *Sanderlin*, 116 F.4th at 913; *see also Villanueva v. California*, 986 F.3d 1158, 1166 (9th Cir. 2021) ("The intent that counts under the Fourth Amendment is the intent conveyed, not the officers' subjective intent.") (citation and internal quotation marks omitted).

*Cheairs v. City of Seattle*, 145 F.4th 1233, 1239–40 (9th Cir. 2025).

Here, evidence in the form of the body-worn camera footage before the court on summary judgment establishes that before using the battering ram: officers instructed the occupants to "open the front door;" plaintiff Carroll responded to the officers; one officer noted, "I can hear a woman, she's coming to the door;" and then another officer who was looking through a front window toward the interior of the front door noted, "I can see someone standing there; they're not doing anything though." (GV at 07:00:48–07:01:24.) Additionally, although officers instructed the occupants of the residence to open the door several times, it appears undisputed that officers never warned of their intention to break down the door, nor did they instruct any occupants to back up. (*Id.*) Based upon this video evidence, the court concludes that a reasonable jury could find that "the intent that has been conveyed to the person confronted" was that the battering ram

/////
/////
/////
/////
/////
/////

was being used to break down the front door *and* to restrain the occupant standing behind it.[4]

*Nelson v. City of Davis*, 685 F.3d 867, 877 (9th Cir. 2012); *see also Economus v. City & Cnty. of San Francisco*, No. 18-cv-01071-HSG, 2019 WL 1483804, at *4 (N.D. Cal. Apr. 3, 2019) ("Based on the Court's review of the evidence and drawing all inferences in favor of Plaintiff, the Court finds that there is a genuine dispute of material fact as to Officer Paul's intent.  That is, it is reasonably in dispute whether Officer Paul moving to the middle of the intersection was somehow an 'accident,' or whether he instead intentionally acted as a physical obstacle to stop Mr. Economus."); *cf. Torrez v. City of Farmington*, No. 02-cv-01381-MV-RHS, 2006 WL 8444534, at *19 (D.N.M. Feb. 22, 2006) ("Defendant Maestas' falling on Plaintiff was the accidental result of the forced entry into the apartment.  There is no evidence to suggest that Defendant Maestas collided with Plaintiff for the purpose of seizing him.").

Defendants argue that the battering ram is designed to open doors, not to seize individuals. (Doc. No. 59-2 at 6.)  While the Ninth Circuit has considered the design of the tool employed by police in evaluating whether a seizure occurred, it has ultimately concluded that where evidence suggests that a tool might be *designed* to disperse, for instance, but could still be *used* to seize, the

---

[4]  Though a reasonable jury could so find from this evidence, the court notes that it makes no difference whether the officers were targeting plaintiff Carroll specifically or the occupants of the home generally.  *See Nelson*, 685 F.3d at 877 ("Regardless of whether Nelson was the specific object of governmental force, he and his fellow students were the undifferentiated objects of shots intentionally fired by the officers in the direction of that group.  . . .  Their conduct was intentional, it was aimed towards Nelson and his group, and it resulted in the application of physical force to Nelson's person as well as the termination of his movement.  Nelson was therefore intentionally seized under the Fourth Amendment.").  Moreover, it is also not relevant whether the officers hoped to avoid hitting *any* occupant with the battering ram but manifested an intent to restrain any occupant who, in the officers' view, chose to linger just behind the door without complying with their demands.  *See Brower v. County of Inyo*, 489 U.S. 593, 598 (1989) ("[A] roadblock is not just a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur.  It may well be that respondents here preferred, and indeed earnestly hoped, that Brower would stop on his own, without striking the barrier, but we do not think it practicable to conduct such an inquiry into subjective intent.").  Whether plaintiff Carroll could demonstrate seizure on the theory that the battering ram was part of a generalized effort by officers to "dominate" the "entire" house, the court need not and does not decide.  *See Moore v. Wkly.*, 159 F. Supp. 3d 784, 790 (E.D. Mich. 2016) ("Here, a team of heavily-armed officers waited until after midnight, burst through the front door using a battering-ram, and then 'dominated' the front room 'in a matter of seconds' and detained every adult in the house.").

resolution of the question should be left to a finder of fact. *See Cheairs*, 145 F.4th at 1242–43 ("From these facts, a reasonable jury could decide that the use of force was objectively intended to push back the crowd, rather than to restrain the crowd or any member of the crowd. . . . However, a reasonable jury could also reach the contrary conclusion because the blast ball that injured Cheairs is capable of inflicting very serious injury—if not by design, then if used in the way we have described."). So too here, while the battering ram was undoubtedly designed to break down doors, it is also certainly capable of restraining, and a reasonable jury could find that the officers manifested an intent to use the battering ram for the purpose of restraining the woman standing behind the door even if that was not the use for which it was designed.

Accordingly, the court concludes based upon the evidence presented that defendants are not entitled to summary judgment in their favor as to plaintiff's Fourth Amendment claim for excessive use of force based on their argument that no seizure occurred.[5]

    2.      Reasonableness

The next step in analyzing a claim for excessive use of force is to examine the reasonableness of the use of force. *Cheairs*, 145 F.4th at 1243. The Ninth Circuit has recently again summarized the appropriate analysis as follows:

> Whether Cheairs's Fourth Amendment claim survives the motion for summary judgment depends on whether the record supports his contention that a jury could find that Officer Anderson's use of force was unreasonable. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (explaining that the critical question in determining whether a seizure comports with the Fourth Amendment is whether the use of force was objectively reasonable under the circumstances). This question requires us to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion" to determine whether the government's use of force was excessive. *Scott*, 550 U.S. at 383, 127 S.Ct. 1769 (quotation omitted). The government's interest in the use of force depends on: "(1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of the officers or

---

[5] Defendants also advance the closely related argument that because plaintiff Carroll was not seized and hitting her was an accident, "force," as defined by Fourth Amendment law, was not used on her at all. (Doc. No. 59 at 19.) Defendants offer no independent basis for this argument. Because the court finds that a reasonable jury could find from the evidence that a seizure occurred and that hitting plaintiff Carroll was intentional, the court need not address defendants' argument that the use of the battering ram did not constitute force for those same reasons.

others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Sabbe*, 84 F.4th at 822; *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865. The "immediate threat" factor is the most important. *Sabbe*, 84 F.4th at 822.

When balancing these interests, we consider the "totality of the circumstances," *Plumhoff v. Rickard*, 572 U.S. 765, 774, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (2014), including the "particular situation" and the "particular type of force" used. *Scott*, 550 U.S. at 382, 127 S.Ct. 1769. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. We allow for an officer's need "to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397, 109 S.Ct. 1865.

*Id.* "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005), *disapproved of on other grounds by Lemos v. County of Sonoma*, 40 F.4th 1002 (9th Cir. 2022); *see also Seidner v. de Vries*, 39 F.4th 591, 601 (9th Cir. 2022); *Est. of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017); C.*V. ex rel. Villegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016); *Green v. City of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014); *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014).

Here, defendants argue that this incident "does not fit at all easily into the typical Fourth Amendment excessive force analysis per *Graham v. Connor*, 490 U.S. 386, 397 (1989) and/or Model Ninth Circuit Civil Jury Instruction 9.25." (Doc. No. 59 at 20.) Rather, defendants contend that the proper analysis in this case is limited solely to a determination of whether it was reasonable "for Ofc. Fogal to breach the door 36 seconds after the initial knock-notice announcement in this situation, when viewed from the perspective of a reasonable officer." (*Id.*) The court disagrees.

Typically, when analyzing the reasonableness of the officer's decision to breach a suspect's door to execute a warrant, all that is at stake for the plaintiff is the potential "damage [to] property in the course of getting in[,]" and this alone "is a good reason to require more

12

patience than it would be reasonable to expect if the door were open." *United States v. Banks*, 540 U.S. 31, 41 (2003). Even then, the court must, at minimum, examine not only the length of the delay between the knock-notice and the forced entry but also whether an "exigent need of law enforcement" justified the limited delay. *Id.* at 40. This is because "the exigent need of law enforcement trumps a resident's interest in avoiding all property damage[.]" *Id.* However, where officers use a device, such as a flashbang, to "gain entry and secure the premises[,]" *and* the device causes injury to an occupant, the Ninth Circuit has examined whether the force used on the *person* was "objectively reasonable" pursuant to "*Graham*[,]" examining much more than merely whether an exigency existed and the length of the officers' delay. *See Boyd v. Benton County*, 374 F.3d 773, 777 (9th Cir. 2004) (examining reasonableness by reference to whether there were alternatives or appropriate measures available that would reduce the risk of injury and whether they were considered, the known potential for injury, the number of individuals put at risk, whether those put at risk included individuals unconnected to the crime being investigated, whether the officers warned the occupants, and whether there was reason to believe that the occupants were armed). Here, where the same action taken by police both forces entry through the front door or a residence and injures an occupant standing behind the door, the appropriate inquiry as to the application of the force is whether it was reasonable under *Graham*. *See id.*; *cf. Johnson v. Myers*, 129 F.4th 1189, 1194 (9th Cir. 2025) (applying the reasonableness inquiry applicable to the use of force in determining whether the officers "were justified in shooting Smith without warning within seconds of breaking down the door").

Turning to the *Graham* reasonableness inquiry, defendants have declined to analyze the applicable factors, not only in their motion but also in their reply, even after plaintiff Carroll analyzed those factors in detail in her opposition. (Doc. Nos. 59; 63 at 11–13; 66 at 8.) According to defendants' reply, they do "not believe any detailed response to Plaintiffs' inept *Graham* analysis is prudent here[.]" (Doc. No. 66 at 8.)

As the moving party, defendants "initially bear[] the burden of proving the absence of a genuine issue of material fact." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 323). In failing to address the reasonableness factors, defendants have therefore failed to meet their

13

initial burden, effectively conceding the issue. *See Kruse Tech. P'ship v. Caterpillar, Inc.*, No. 04-cv-10435-GPS-FMO, 2008 WL 11255233, at *6 (C.D. Cal. Oct. 6, 2008) (finding that the defendant "apparently concedes because it fails to argue the construction issue in its reply" in support of its motion for summary judgment).

In the absence of any argument from the moving party as to the reasonableness of the force used, the court concludes that defendants are not entitled to summary judgment in their favor as to plaintiff Carroll's excessive use of force claim.

3.    Each Officer's Role

Defendants argue that because only defendant Officer Fogal employed the breaching tool, and none of the other individual defendants used the battering ram, the other individual defendants cannot be found liable and are entitled to summary judgment in their favor.  (Doc. No. 59 at 20.)

"Section 1983 liability extends to those who perform functions 'integral' to an unlawful search [or seizure], even if their individual actions do not themselves rise to the level of a constitutional violation." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1089–90 (9th Cir. 2011).  However, "the 'integral participant' doctrine does not implicate government agents who are 'mere bystanders[.]'" *Id.* at 1090.  In this regard, the Ninth Circuit has explained under similar circumstances as follows:

> Defendants also argue that even if a Fourth Amendment violation occurred, only Ellison (the individual who deployed the flash-bang) can be liable for that violation.  . . .  The facts of this case clearly support a finding that each officer involved in the search operation was an "integral participant."  First, . . . the officers in this case stood armed behind Ellison while he reached into the doorway and deployed the flash-bang.  Second, the use of the flash-bang was part of the search operation in which every officer participated in some meaningful way.  Third, every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed.  Therefore, under the integral participation analysis adopted in *Chuman* [*v. Wright,* 76 F.3d 292 (9th Cir. 1996)]*,* each defendant may be held liable for the Fourth Amendment violation outlined above.

*Boyd*, 374 F.3d at 780; *see also Khan v. City of Los Angeles*, 753 F. Supp. 3d 997, 1012 (C.D. Cal. 2024) ("Officers are fundamentally involved in the alleged violation when they provide some

affirmative physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object.") (citation omitted).  Here, a reasonable jury could find based on the body-worn camera footage evidence that:  (1) the other defendant officers stood armed behind defendant Officer Fogal while he deployed the battering ram; and (2) all of those officers participated in some meaningful way in the operation that involved the use of the battering ram, including by communicating with plaintiff Carroll through the door, by looking through the window to see where plaintiff was standing, or by searching the residence upon the forced entry.  (GV at 07:00:48–07:01:24.)

As for the third factor, whether the other officers were aware of the plan to commit the alleged violation or had reason to know of such a plan but did not object, there is evidence before the court on summary judgment that would support the finding that defendant Officer Giles called for defendant Officer Fogal to deploy the battering ram when he did.  Accordingly, a reasonable jury could find that Officer Giles had an opportunity to object, or rather refrain from giving the order, and chose not to do so.  (Doc. No. 63-1 at 411, 496) (Officer Giles "made the call as to when the time was right, and I agreed with it, so I rammed the door.").  A reasonable jury could further find that, after hearing a woman near the front door, the other officers had the opportunity to object following defendant Officer Giles's order but before defendant Officer Fogal used the ram, and  chose not to do so.  *See Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), *as amended* (Oct. 31, 2000) ("Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede.").

From the evidence presented on summary judgment, the finder of fact could reasonably determine that the other defendant officers integrally participated in the use of force on plaintiff.  Therefore, those officers are not entitled to summary judgement in their favor on plaintiff's Fourth Amendment claim.

4.    Qualified Immunity

Defendants argue that the individual officers are entitled to summary judgment on qualified immunity grounds as to any Fourth Amendment claim arising from the battering ram injuring plaintiff.

15

As recognized above, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (citation omitted) (cleaned up); *see also Wesby*, 583 U.S. at 64; *Jessop*, 936 F.3d at 940. In cases such as this one, "[t]he starting point for this analysis [in excessive force cases] is determining whether, under the existing case law, the officers could have reasonably suspected that [plaintiff] was engaged in criminal activity and that [s]he was armed and dangerous." *Hopson v. Alexander*, 71 F.4th 692, 698 (9th Cir. 2023). "We will then proceed to determine whether it was clearly established that the amount of force the officers used was excessive in light of the perceived safety risk." *Id.*

Here, based upon the evidence before the court on summary judgment, a reasonable jury could find that plaintiff appeared non-threatening, since she was communicating with officers about answering the door, and the officers had no reason to believe that she was armed (Doc. Nos. 59-3 at 67; 63-1 at 405–06).[6] *See Michigan v. Summers*, 452 U.S. 692 (1981) ("Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence."); *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001) ("A thorough review of the record reveals that the facts are sufficiently unclear as to what Rutherford believed or feared—reasonable or not—that the determination must be made by a trier of fact, and not, . . . , by portraying the facts in the light most favorable to the moving party."). Nor did the officers have reason to suspect that plaintiff Carroll was engaged in criminal activity since the search warrant was based on suspected drug-related criminal activity by her male partner and officers knew that the person communicating from behind the door was a woman.

/////

---

[6] Defendants' only evidence regarding weapons is the search warrant affidavit's statement that there had been recent shootings in the parking lot of the "Hyphy Smoker Club," where Mr. Rowland, not plaintiff Carroll, was thought to be selling marijuana. (DUF ¶ 1; *see also* Doc. No. 59-3 at 37, 67.) That affidavit did not even link Mr. Rowland to the shootings, let alone plaintiff Carroll. (Doc. No. 59-3 at 37–39.)

(Doc. No. 59-3 at 67) ("Based on these facts, I believe Rowland currently stores illicit drugs at 318 W Alameda St.").

Given the lack of evidence suggesting a safety risk presented by plaintiff, the court concludes that a reasonable jury could find that the use of a battering ram against plaintiff was excessive. *See Deorle*, 272 F.3d at 1281 ("A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury."). While it may be, unsurprisingly, that a court has not been called upon to address the use of a battering ram against a person by police, it has observed that "an officer is not entitled to qualified immunity on the ground that the law is not clearly established every time a novel method is used to inflict injury." *Nelson*, 685 F.3d at 884 (citation omitted) (cleaned up); *see also Cunningham*, 229 F.3d at 1290 (same). "In the cases in which [the Ninth Circuit has] held that the unreasonable application of a new form of force was not clearly established, [their] holdings were premised on the fact that these particular methods represented novel means of applying pain[,]" such as tasers or flash-bang devices. *Nelson*, 685 F.3d at 884. Whereas the risks of deploying a taser or flash-bang device might, at some point, have been unknown or uncertain, the low-tech use of a battering ram against a door behind which a person stands obviously poses a risk of entirely predictable, serious, and unreasonable harm. *Cf. Deorle*, 272 F.3d at 1286 ("No reasonable officer could have believed that Rutherford's action in shooting Deorle with the 'less lethal' lead-filled beanbag round was appropriate or lawful. . . . It does not matter that no case of this court directly addresses the use of such weapons[.]").

As such, this court concludes that a reasonable jury could find from the evidence presented that the defendant officers "were aware at the time . . . that they were using force that might lead to serious injury against [a] non-threatening individual[] who had committed no serious crime." *Hopson*, 71 F.4th at 886. Accordingly, the court also concludes that the defendant officers are not entitled to summary judgment in their favor on qualified immunity grounds. *Id.*

/////

/////

17

**B.      Plaintiff Carroll's Claim for Denial of Medical Care in Violation of the Fourth Amendment**

Police are required to provide seized suspects with "objectively reasonable post-arrest [medical] care" until the seizure ends. *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006). "This means that officers must 'seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital.'" *Est. of Cornejo ex rel. Solis v. City of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015)[7] (citation omitted).

Here, it is undisputed that the defendant officers summoned the necessary medical assistance. (Doc. No. 59-3 at 89–90.) However, plaintiff Carroll argues that the officers unreasonably delayed in doing so and did not arrange appropriate care for her children, which forced her to refuse the ambulance that arrived until she could arrange for the necessary care for her children herself. (Doc. No. 63 at 14.)

As to plaintiff Carroll's claim that the defendant officers unreasonably delayed in summoning the necessary medical assistance, she points to no evidence before the court to support that claim. To the contrary, the body-worn camera footage evidence establishes that 37 seconds after plaintiff was injured, defendant Officer Giles gave the order to "start medics." (DUF ¶ 7; GV at 07:01:26–07:02:03.) Thirty-seven is certainly not an unreasonable delay. *See Dibbern v. City of Bakersfield*, No. 1:22-cv-00723-CDB, 2025 WL 419212, at *2 (E.D. Cal. Jan. 13, 2025) ("Taken in the light most favorable to Plaintiff, the evidence unquestionably establishes that Kidwell promptly summonsed medical care within minutes after his patrol vehicle collided with Plaintiff."). Officer Knight's incident report states that Medic Jones tended to plaintiff's injuries at the residence and, according to plaintiff's deposition testimony, an ambulance then arrived and transported her to a hospital. (DUF ¶ 8; PF ¶ 31; Doc. No. 59-3 at 89–90, 153.) Plaintiff offers no evidence to the contrary. As such, no reasonable jury could find based on the

---

[7]  Citation to unpublished Ninth Circuit opinions throughout this order is appropriate pursuant to Ninth Circuit Rule 36–3(b).

evidence before the court that the defendant officers unreasonably delayed in summoning medical assistance.

As for plaintiff Carroll's argument that she was forced to refuse the ambulance until she could arrange care for her children, plaintiff has offered no authority for the proposition that any such delay was the result of wrongdoing on the part of the defendant officers, as opposed to a voluntary choice on her part. It is true that in dangerous conditions officers are not permitted to abandon minor children who are present when their parents are arrested, but plaintiff Carroll offers no evidence suggesting that here the defendant officers abandoned any of her children. *Wood v. Ostrander*, 879 F.2d 583, 592 (9th Cir. 1989); *see also Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (listing the elements of "the state-created danger doctrine"). If it is plaintiff Carroll's theory that the defendant officers had an obligation to facilitate a prompt call from her to a trusted adult of her choosing to provide childcare, plaintiff's argument is unavailing.

While California Penal Code § 851.5 does afford custodial parents up to two additional phone calls to arrange for childcare, this state statute applies upon one's booking, rather than upon their arrest or seizure. "[T]he statute does not require that officers provide arrestees an opportunity to make a phone call from the place of their arrest to coordinate for the care of minor children at the scene[.]" *Bonilla-Chirinos v. Maggiano*, 776 F. App'x 520, 521 (9th Cir. 2019). Additionally, while detainees may have a Fourth Amendment right to access their cell phones within a certain amount of time in order to coordinate childcare, any such right was not clearly established in August of 2022. In this regard, the Ninth Circuit stated in 2023:

> [W]e assume without deciding that [defendant] Wynar violated Chavez's Fourth Amendment rights by denying her access to her cell phone for one hour and 20 minutes [when she needed to use the phone to arrange childcare]. At the second step of the qualified immunity analysis, however, we conclude that the law regarding the denial of phone access was not clearly established.

*Chavez v. Wynar*, No. 21-16094, 2023 WL 2535266, at *1 (9th Cir. Mar. 16, 2023). Accordingly, because any constitutional right to be provided "an opportunity to make a phone call from the place of . . . arrest to coordinate for the care of minor children at the scene" was not "not clearly

/////

19

established at the time of the officers' conduct, they are entitled to qualified immunity." *Bonilla-Chirinos*, 776 F. App'x at 521.

Therefore, the court will grant defendants' motion for summary judgment as to plaintiff Carroll's claim that the defendant officers violated her right to receive timely medical care by impeding her ability to arrange appropriate care for her children.

**C.      Plaintiff Carroll's First Amendment Claim**

Plaintiff Carroll's First Amendment claim is based on the theory that officers retaliated against her protected speech, specifically her verbal communication to them that she was going to open the door, by forcibly breaching it and causing her injury. (Doc. No. 63 at 15.) Defendants argue that this claim fails as a matter of law because plaintiff Carroll's alleged speech in this regard does not constitute protected speech, there is no evidence that the officer's action would chill a person of ordinary firmness from engaging in such speech, and there is no evidence before the court on summary judgment that any protected speech was a substantial or motivating factor behind the officers' decision to breach the door and enter the residence. (Doc. No. 59 at 23–24.)

The Ninth Circuit has recognized as follows:

> To state a First Amendment retaliation claim, a plaintiff must plausibly allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)). To ultimately "prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.' " *Nieves v. Bartlett*, — U.S. —, 139 S. Ct. 1715, 1722, 204 L.Ed.2d 1 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006)). Specifically, a plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (quoting *Hartman*, 547 U.S. at 260, 126 S.Ct. 1695).

*Capp v. County of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019).

As to the third element of her retaliation claim, plaintiff Carroll offers no evidence to support her counterintuitive theory that her statement—that she was about to open the door *in compliance with the officers' request*—inspired retaliatory animus, which motivated the officers'

20

decision to breach the door and injure plaintiff Carroll. *See Gonzalez v. City of Newport Beach*, No. 8:20-cv-00142-JLS-ADS, 2021 WL 6618757, at *6 (C.D. Cal. Oct. 13, 2021) (finding that the plaintiffs, who were arrested after filming the defendant officers, had offered "no evidence of any [retaliatory] motive" where "they were never ordered by any Newport Beach Police Department officer to put their camera away or turn off their video cameras[,] they were never told that they could not film the incident[,]" and two officers "explicitly affirmed that Plaintiffs had the right to film" as long as they moved "to a reasonable distance away").

Accordingly, the court concludes that plaintiff Carroll has failed to come forward with evidence on summary judgment raising a triable issue of fact as to her First Amendment claim or from which a reasonable jury could return a verdict in her favor as to that claim. Therefore, defendants' motion for summary judgment will be granted in this regard.

**D.      Plaintiff Carroll's *Monell* Claim**

Defendants argue that plaintiff Carroll has also failed to raise a triable issue of fact as to her *Monell* claim brought against the City of Stockton because she offers no evidence demonstrating that any claimed constitutional violation was carried out pursuant to an official policy, longstanding practice, or custom (Doc. No. 59 at 25). *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) ("A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.") (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). In her opposition, plaintiff Carroll neither addresses defendants' argument in this regard, mentions her *Monell* claim at all, or points to any evidence before the court of an official policy, longstanding practice, or custom on the part of the defendant City of Stockton. (Doc. No. 63.)

Therefore, the court concludes that plaintiff Carroll has failed to come forward with evidence establishing a triable issue of fact as to her *Monell* claim against the City of Stockton or from which a reasonable jury could return a verdict in her favor as to that claim. Accordingly, defendants' motion for summary judgment in their favor as to this claim will be granted.

/////

21

**E.      Plaintiff Carroll's State Law Claims**

      1.      <u>Bane Act Claim</u>

Defendants argue that plaintiff Carroll's Bane Act claim fails as a matter of law because: (1) it was not a violation of her constitutional rights to use the ram to enter the residence; (2) plaintiff Carroll has presented no evidence that any defendant officer used the ram to intimidate or coerce her; (3) there is no "evidence of intent or reckless disregard to Carroll by making such an entry to execute the valid search warrant;" and (4) plaintiff Carroll has presented no evidence that any defendant officer acted with the specific intent to violate her rights.  (Doc. No. 59 at 26.) The court has already rejected defendants' first argument in concluding that they are not entitled to summary judgment on plaintiff Carroll's Fourth Amendment claims.

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007).  In Bane Act cases, "where Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force."  *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 802 n.31 (2017), *as modified* (Nov. 17, 2017) (citation omitted) (cleaned up).  Accordingly, defendants are not entitled to summary judgment on plaintiff's Bane Act claim based on their argument that officers did not coerce plaintiff Carroll within the meaning of the Act.

In order to prevail on her Bane Act claim plaintiff must also demonstrate that the "arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure[.]" *Murchison*, 69 Cal. App. 5th at 896.

> There are two requirements for a finding of specific intent. (*Cornell, supra*, 17 Cal.App.5th at p. 803, 225 Cal.Rptr.3d 356.)  First, the court must make the legal determination of whether the " ' "right at issue [is] clearly delineated and plainly applicable under the circumstances of the case." ' " (*Ibid.*)  Second, if the first condition is answered in the affirmative, " ' "the jury must make the second, factual, determination.  Did the defendant commit the act in question

with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that . . . right? If both requirements are met, even if the defendant did not in fact recognize the [unlawfulness] of his act, he will be adjudged as a matter of law to have acted [with the requisite specific intent]—i.e., 'in reckless disregard of constitutional [or statutory] prohibitions or guarantees.' " ' " (*Ibid.*)

Applying this standard here, the rights at issue are plaintiff's constitutional rights to be free from unlawful search and excessive force. As we have discussed with respect to qualified immunity in the context of plaintiff's unlawful search and excessive force claims, these rights are clearly defined.

Defendants contend there is no evidence that the officers acted with specific intent to deprive plaintiff of the enjoyment of his Fourth Amendment rights. But as the appellate court reiterated in *Cornell, supra*, 17 Cal.App.5th at page 804, 225 Cal.Rptr.3d 356, "whether the appellant officers understood they were acting unlawfully was not a requirement. Reckless disregard of the 'right at issue' is all that was necessary." As we have discussed and based on the facts before us, a reasonable jury *could* find that the officers recklessly disregarded plaintiff's constitutional rights.

*Id.* at 896–97; *see also Chinaryan v. City of Los Angeles*, 113 F.4th 888, 907–08 (9th Cir. 2024) ("In most cases, including this one, the existence of specific intent for a Bane Act claim is a question that is properly reserved for the trier of fact.") (internal quotation marks omitted); *S.T. ex rel. Niblett*, 327 F. Supp. 3d at 1283 (denying summary judgment as to the plaintiff's Bane Act claim where the plaintiff had demonstrated that a reasonable juror could find the defendant officers acted unreasonably and with a purpose to harm by shooting the decedent twice in the back while he was fleeing).

Above, the court has already rejected defendants' arguments that the right at issue was not clearly established at the time of the officers' conduct. As for whether the officers recklessly disregarded the right at issue, the court has also determined above that a reasonable jury could find that the officers knew that plaintiff Carroll was behind the door before the battering ram was used and intended not only to open the door but also to restrain her by using the impact of the ram. From the same evidence, the court concludes that a reasonable jury could find that defendants recklessly disregarded plaintiff Carroll's right to be free from excessive force. Accordingly, defendants' motion for summary judgment in their favor on plaintiff Carroll's Bane Act claim will be denied.

2.    Negligence Claim

Defendants argue that they are entitled to summary judgment as to plaintiff Carroll's negligence claim because the use of the battering ram was clearly lawful under the totality of the circumstances. (Doc. No. 59 at 26–27.)  In her opposition, plaintiff Carroll argues that California law requires officers to exercise reasonable care when executing a warrant, including avoiding foreseeable harm to those in the zone of danger, and that here a reasonable jury could find from the evidence that the harm caused to plaintiff Carroll was foreseeable. (Doc. No. 63 at 20.)

> To prevail on a claim for negligence, a plaintiff must establish:  (1) a legal duty to use due care; (2) a breach of that duty; and (3) injury that was proximately caused by the breach. *Ladd v. Cnty. of San Mateo*, 12 Cal.4th 913, 917, 50 Cal.Rptr.2d 309, 911 P.2d 496 (1996).  Police officers in California have a duty not to use excessive force. *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1101, 16 Cal.Rptr.3d 521 (2004) (recognizing "a duty on the part of police officers to use reasonable care in deciding to use and in fact using deadly force").  The reasonableness of an officer's conduct in using force is determined in light of the totality of circumstances. *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629, 160 Cal.Rptr.3d 684, 305 P.3d 252 (2013).  As long as an officer's conduct falls "within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence." *Id.* at 632, 160 Cal.Rptr.3d 684, 305 P.3d 252 (quoting *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 537–38, 89 Cal.Rptr.3d 801 (2009)).
>
> . . .
>
> "[S]tate negligence law, which considers the totality of the circumstances surrounding any use of . . . force, is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when . . . force is used." *Hayes*, 57 Cal.4th at 639, 160 Cal.Rptr.3d 684, 305 P.3d 252 (internal citation omitted).  Thus, "[l]aw enforcement personnel's tactical conduct and decisions preceding the use of [challenged] force are relevant considerations under California law in determining whether the use of [such] force gives rise to negligence liability." *Id.*  "There are circumstances in which a court must allow a negligence claim to go to a jury even if summary judgment and/or qualified immunity on a Section 1983 excessive force claim is proper." *Alves v. Riverside County*, No. ED-CV-192083-JGB(SHKx), 2023 WL 4104185, at *11 (C.D. Cal. May 19, 2023).

*Stephenson v. California*, 761 F. Supp. 3d 1242, 1275–76 (C.D. Cal. 2025), *appeal dismissed sub nom. Stephenson v. McKee*, No. 25-336, 2025 WL 1143493 (9th Cir. Apr. 8, 2025).

24

For the reasons stated above as to plaintiff's excessive use of force claim, and viewing the evidence in a light most favorable to plaintiff, the court concludes that a reasonable jury could find that defendants' use of force was unreasonable here under the totality of the circumstances. *Id.* at 1276.  Therefore, defendants are not entitled to summary judgment with respect to plaintiff Carroll's state law negligence claim.

### 3.     Assault and Battery Claims

Defendants argue that plaintiff Carroll's assault and battery claims fail because the standard for evaluating whether force is unreasonable for purposes of a battery is the same as under the Fourth Amendment, and assault is subsumed into her battery claim in this case since the door actually hit plaintiff Carroll's body.  (Doc. No. 59 at 27.)  Plaintiff Carroll argues in opposition that, as to battery, the defendants' use of the force was objectively unreasonable, and, as to her assault claim, that just before she was hit, she saw shadows, heard yelling, and feared harm.  (Doc. No. 63 at 20–21.)

"Because the same standards apply to both state law assault and battery and Section 1983 claims premised on constitutionally prohibited excessive force, the fact that Plaintiff's § 1983 claims under the Fourth Amendment survive summary judgment also mandates that the assault and battery claims similarly survive." *Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010), *aff'd,* 685 F.3d 867 (9th Cir. 2012).  Further, "[w]ith respect to the assault . . . claim[], the Court disagrees with Defendants that Plaintiff cannot recover for assault because the evidence indicates a battery.  . . .  'The tort of assault is complete when anticipation of harm occurs.'" *Booke v. County of Fresno*, 98 F. Supp. 3d 1103, 1130 (E.D. Cal. 2015) (citation omitted).

### F.     Plaintiff T.R.'s NIED Claim

Defendants move for summary judgment in their favor as to plaintiff T.R.'s NIED claim[8] arguing that the evidence before the court on summary judgment establishes that:  (1) hitting plaintiff Carroll was an accident, rendering the officers' breach of the door lawful; and

---

[8]  Plaintiff T.R.'s NIED to a bystander claim is based on the theory that her experience of seeing officers ram open the front door, thereby hitting her mother, caused her severe emotional distress. (Doc. No. 63 at 21.)

(2) plaintiff T.R. did not suffer severe emotional distress as a result of plaintiff Carroll's injury. (Doc. No. 59 at 28.)  Above, the court has already addressed and rejected defendants' first argument as a basis upon which summary judgment may be granted in this case.

There are "three requirements that a plaintiff must satisfy to recover on a claim for NIED to a bystander:  (1) the plaintiff must be closely related to the injury victim; (2) the plaintiff must have been present at the scene of the injury-producing event at the time it occurred and then aware that it was causing injury to the victim; and (3) as a result, the plaintiff must have suffered serious emotional distress." *Keys v. Alta Bates Summit Med. Ctr.*, 235 Cal. App. 4th 484, 488 (2015); *see also Thing v. La Chusa*, 48 Cal. 3d 644, 647 (1989) (framing the third element as requiring "emotional distress beyond that which would be anticipated in a disinterested witness"). Defendants do not contest that plaintiff T.R. satisfies, for purposes of the pending motion, the first two elements of her claim for bystander liability as to her NIED claim.  (Doc. No. 59 at 28.)

"[S]erious emotional distress exists if an ordinary, reasonable person would be unable to cope with it." *Keys*, 235 Cal. App. 4th at 491; *see also Wong v. Jing*, 189 Cal. App. 4th 1354, 1378 (2010) ("In our view, this articulation of 'serious emotional distress' is functionally the same as the articulation of 'severe emotional distress.'").  "[E]motional distress includes suffering, anguish, fright, nervousness, grief, anxiety, worry, [and] shock." *Keys*, 235 Cal. App. 4th at 491 (internal citation omitted) (cleaned up).  Where the plaintiff offers "evidence that he experienced some emotional distress, but the record does not raise a genuine issue that it rose to the level recognized by California courts as sufficient to support a NIED claim," it is appropriate to grant summary judgment. *Martirosyan v. United Parcel Serv., Inc.*, No. 23-55814, 2025 WL 471111, at *2 (9th Cir. Feb. 12, 2025).

Here, viewing the evidence on summary judgment in the light most favorable to plaintiffs, plaintiff T.R. observed officers ramming open the front door, in the process hitting and injuring her mother, and from which a reasonable jury could find any reasonable person would suffer serious emotional distress (Doc. No. 63-1 at 365). *See Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App. 5th 1145, 1166 (2021) (taking into account whether a reasonable person would suffer serious emotional distress as a result of the circumstances of the case).  Further, plaintiff T.R.

testified at deposition that, following the incident, she experienced stomach aches, headaches, anxiety, depression, crying, and one panic attack, felt scared, developed a recurring fear of police, her grades in school dipped, and she required regular counseling sessions.  (Doc. No. 63-1 at 341, 345, 352–55, 358–59, 361, 368.)  Plaintiff T.R. also reported that whenever she thinks about the incident she feels the same all over again.  (*Id.* at 358.)  Plaintiff T.R.'s deposition was taken on February 6, 2025, and plaintiff T.R. testified that in 2025 alone, years after the incident took place, she had talked to her mother five or six times about dealing with depression and being anxious.  (*Id.* at 359.)

Viewing the evidence in the light most favorable to plaintiff T.R., the court concludes that a reasonable jury could find that she suffered serious emotional distress as a result of this incident.  *Compare Keys*, 235 Cal. App. 4th at 491 (holding that the court had no reason to question the jury's verdict because there was "no question" that the plaintiffs provided "sufficient proof" that watching a close family member die caused serious emotional distress where one plaintiff testified to being scared and upset, would not agree to the characterization that she was able to cope with mental and emotional stress of the events, and testified that she went to pieces, and where the other plaintiff testified to feeling helpless, devastated, very emotional, and shocked), *and Belen*, 65 Cal. App. 5th at 1165 (2021) (holding that, for purposes of an anti-SLAPP motion, the plaintiff had shown the sort of serious emotional distress with which a reasonable person would be unable to cope where producers filmed and broadcasted her naked body, and according to plaintiff the incident caused "sleepless nights and 'a perpetual state of nausea and serious anxiety[]'" in addition to "extreme [emotional] pain'" for which she "'required therapy'"), *with Wong*, 189 Cal. App. 4th at 1377 (holding that the plaintiff had failed to raise a disputed issue of material fact as to whether a critical Yelp review caused her serious emotional distress where, "in her declaration, she stated only that the review 'was very emotionally upsetting to [her], and has caused [her] to lose sleep, have stomach upset and generalized anxiety[]'").

Accordingly, the court concludes that defendants are not entitled to summary judgment in their favor as to plaintiff T.R.'s NIED claim.

**G.      Immunity Under California Law**

Defendants argue that they are entitled to summary judgment on immunity grounds with respect to plaintiffs' state law claims pursuant to California Government Code §§ 815.2(b), 820.2, 820.4, and 821.6.  (Doc. No. 59 at 29–30.)

"California denies immunity to police officers who use excessive force in arresting a suspect." *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002).  As discussed above, a reasonable jury could find from the evidence presented on summary judgment that ramming of the door of the residence which then hit plaintiff Carroll constituted the excessive use of force. Accordingly, defendants are not entitled to summary judgment on the basis of any of the state law immunity provisions cited by defendants.  *See Blankenhorn v. City of Orange*, 485 F.3d 463, 487–88 (9th Cir. 2007) ("But it has long been established that this provision [Government Code § 820.2] does not apply to officers who use unreasonable force in making an arrest. . . . [Because plaintiffs' claims are] based on acts that allegedly happened during [an] arrest, not pursuant to an investigation into [plaintiffs'] guilt, section 821.6 does not confer immunity from those claims upon Defendants.'"); *see also Sharp v. Cnty. of Orange*, 871 F.3d 901, 920 (9th Cir. 2017); *Conway v. Cnty. of Tuolumne*, 231 Cal. App. 4th 1005, 1015 (2014) (noting "courts have determined discretionary immunity does not apply to . . . using unreasonable force when making an arrest or overcoming resistance to it"); *Thomas v. Dillard*, 212 F. Supp. 3d 938, 949 (S.D. Cal. 2016) ("Defendant's argument regarding section 820.4 is contrary to California law, which denies statutory immunity to police officers who use excessive force.") (citations omitted).

Therefore, defendants' motion for summary judgment based on the provisions of state law upon which they rely will also be denied.

**CONCLUSION**

For the reasons explained above,

1.      Defendants' motion for summary judgment (Doc. No. 59) is GRANTED in part and DENIED in part as follows:

   a.      Defendants' motion for summary judgment as to plaintiff Carroll's first claim for unlawful seizure in violation of the Fourth Amendment brought

28

under 42 U.S.C. § 1983 against defendants Knight, Fogal, Garlick, and Giles is DENIED;

b.    Defendants' motion for summary judgment as to plaintiff Carroll's second claim for excessive use of force in violation of the Fourth Amendment brought under 42 U.S.C. § 1983 against defendants Knight, Fogal, Garlick, and Giles, is DENIED;

c.    Defendants' motion for summary judgment as to plaintiff Carroll's third claim for denial of timely medical care in violation of the Fourth Amendment brought under 42 U.S.C. § 1983 against defendants Knight, Fogal, Garlick, and Giles is GRANTED;

d.    Defendants' motion for summary judgment as to plaintiff Carroll's fourth claim for violation of her rights under the First Amendment brought pursuant to 42 U.S.C. § 1983 against defendants Knight, Fogal, Garlick, and Giles is GRANTED;

e.    Defendants' motion for summary judgment as to plaintiff Carroll's fifth claim for *Monell* liability brought under 42 U.S.C. § 1983 against defendant City of Stockton is GRANTED;

f.    Defendants' motion for summary judgment as to plaintiff Carroll's sixth claim for violation of the Bane Act, California Civil Code § 52.1, brought against all defendants is DENIED;

g.    Defendants' motion for summary judgment as to plaintiff Carroll's seventh claim under state law for negligence against all defendants is DENIED;

h.    Defendants' motion for summary judgment as to plaintiff Carroll's eighth claim under state law for assault against all defendants is DENIED;

i.    Defendants' motion for summary judgment as to plaintiff Carroll's ninth claim under state law for battery against all defendants is DENIED;

/////

/////

29

> j.      Defendants' motion for summary judgment as to plaintiff T.R.'s thirteenth[9] claim for negligent infliction of emotional distress against all defendants is DENIED; and

2.   The parties are directed to meet and confer on their availability, and within fourteen (14) days of the docketing of this order, to contact Courtroom Deputy Pete Buzo at (916) 930-4016 or pbuzo@caed.uscourts.gov with several proposed dates for the rescheduling of a Final Pretrial Conference and Jury Trial in this action.  The court notes that the Jury Trial must be scheduled for a date that is not less than 60 days after the Final Pretrial Conference.

IT IS SO ORDERED.

Dated:   **March 27, 2026**

_Dale A. Drozd_

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

---

[9]  On May 7, 2025, the parties filed a joint stipulation to voluntarily dismiss certain claims.  (Doc. No. 57.)  Pursuant to that stipulation, the court dismissed plaintiffs' tenth, eleventh, and twelfth claims.  (Doc. No. 58.)